Russell M. Selmont (SBN 252522)
  rselmont@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

Attorneys for Defendants and Counterclaimants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MOSES CHOI, an individual; and SOUTHEAST REGIONAL CENTER, LLC, a Georgia limited liability company, | Case No. 2:17-cv-8958-CAS (AFMx) |
| | *Hon. Christina A. Snyder – Crtrm 8D* |
| Plaintiffs, | |
| v. | **OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS** |
| 8TH BRIDGE CAPITAL, INC., a California corporation; YOUNG HUN KIM, an individual; 8TH BRIDGE CAPITAL, LLC, a California limited liability company; MANHATTAN REAL ESTATE FUND GP, LLC, a Delaware limited liability company; MANHATTAN REAL ESTATE FUND, LP, a Delaware limited partnership; MANHATTAN REAL ESTATE FUND II, LP, a Delaware limited partnership; MANHATTAN REAL ESTATE EQUITY FUND, LP, a Delaware limited partnership; and PATRICK JONGWON CHANG, an individual. | *[Filed Concurrently with Declaration of Young Kim]*<br><br>Date:  July 16, 2018<br>Time: 10:00 a.m.<br>Ctrm: 8D<br><br>*Action Filed: December 13, 2017* |
| Defendants. | |
| AND RELATED COUNTER-CLAIMS | |

ERVIN COHEN & JESSUP LLP

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ....................................................................... 1

II.     THE AJIN LLC'S ARE SUBJECT TO PERSONAL JURISDICTION .......... 2

        A.      Standard on 12(b)(2) Motion to Dismiss ................................. 2

        B.      The Ajin LLC's Were Part of the Alleged Joint Venture and
                Purposefully Directed Activity in This District, Which Gives
                Rise to the Imposition of Specific Jurisdiction ...................... 3

                1.      Statement of Jurisdictional Facts .................................. 3

                2.      The Ajin LLCs Purposefully Availed Themselves of
                        California by Negotiating in California, Targeting
                        California Residents and Allegedly Agreeing to a Long-
                        Term Contract With California Residents ......................... 5

                3.      The Declaratory Relief Claim Arises Out of the Forum
                        Related Activities ..................................................... 7

                4.      Counter-Defendants Have Not Met Their Burden That the
                        Exercise of Jurisdiction is Unreasonable ....................... 8

III.    THE COUNTERCLAIMS ARE ALL WELL-PLEADED ......................... 9

        A.      The Counterclaim for Interference with Prospective Economic
                Advantage Sufficiently Alleges the Independently Wrongful
                Acts of Counter-Defendants ............................................... 9

                1.      Defamation ............................................................. 10

                2.      Unfair Business Practices in Violation of Cal. Bus. & Prof.
                        Code Section 17200 ................................................. 13

                3.      Intentional Interference With Contract/Unlawful Business
                        Practices Under Cal. Bus. & Prof. Code Section 17200 ..... 14

        B.      The Counterclaim for Rescission Based on Fraud is Well-
                Pleaded ...................................................................... 16

        C.      The Counterclaim for Breach of Oral Contract is Well-Pleaded ..... 17

                1.      The Contract is not Uncertain .................................... 17

                2.      The Contract is Not Barred By the Statute of Frauds ......... 19

                        (a)     Chang's Performance Could be Completed in One
                                Year ........................................................... 19

                        (b)     Chang Alleged Full Performance of a Unilateral
                                Contract ...................................................... 20

16337.1:9282836.2

i

ERVIN COHEN & JESSUP LLP

(c)     Chang Has Adequately Pleaded Estoppel ........................ 21

D.     The Promissory Estoppel Counterclaim is Well Pleaded ................... 21

IV.     CONCLUSION ............................................................. 22

ERVIN COHEN & JESSUP LLP

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Advanced Targeting Systems, Inc. v. Advanced Pain Remedies, Inc.* (S.D. Cal. 2014)
2014 WL 347608 at *8 ................................................................................. 7

*AT & T v. Compagnie Bruxelles Lambert* (9th Cir. 1996)
94 F.3d 586 ....................................................................................... 3, 5

*Ballard v. Savage* (9th Cir. 1995)
65 F.3d 1495 ........................................................................................ 3

*Caruth v. Int'l Psychoanalytical Ass'n* (9th Cir. 1995)
59 F. 3d 126 ......................................................................................... 9

*Consortium Information Services, Inc. v. Credit Data Services, Inc.* (9th Cir. 2005)
149 Fed.Appx. 575 ............................................................................... 21

*CRST Van Expedited, Inc. v. Werner Enterprises* (2007)
479 F.3d 1099 ................................................................................ 13, 15

*Luxul Technology v. Nectarlux, LLC* (N.D. Cal. 2015)
78 F.Supp. 3d 1156 ......................................................................... 13, 14

*Milkovich v. Lorain Journal Co.* (1990)
497 U.S. 1 ......................................................................................... 12

*Picot v. Weston* (9th Cir. 2015)
780 F.3d 1206 ...................................................................................... 5

*Rosenthal v. Fonda* (9th Cir. 1988)
862 F. 2d 1398 ............................................................................... 19, 20

*Schwarzenegger v. Fred Martin Motor Co.* (9th Cir. 2004)
374 F. 3d 797 ...................................................................................... 8

*Sustainable Ranching Partners, Inc.* (N.D. Cal. 2017)
2017 WL 4805576 at *5 .......................................................................... 6

*United Tactical Systems LLC v. Real Action Paintball, Inc.* (N.D. Cal. 2015)
108 F.Supp. 3d 733 ............................................................................... 6

*Yen v. Buchholz* (N.D. Cal. 2010)
2010 WL 1758623 at *6-7 ..................................................................... 7, 8

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

**STATE CASES**

*Albertini v. Schaefer* (1979)
97 Cal.App. 3d 822.................................................................................11

*Anglo Irish Bank Corp., PLC v. Superior Court* (2008)
165 Cal.App. 4th 969...........................................................................6, 7

*Blaustein v. Burton* (1970)
9 Cal.App. 3d 161.................................................................................20

*Byrne v. Laura* (1997)
52 Cal.App. 4th 1054.............................................................................21

*Checker Motors Corporation v. Superior Court* (1993)
13 Cal.App. 4th 1007..............................................................................8

*Daniels v. Select Portfolio Servicing, Inc.* (2016)
246 Cal.App. 4th 1150...........................................................................20

*Frebank Co. v. White* (1957)
152 Cal.App. 2d 522.............................................................................21

*Goldberg v. City of Santa Clara* (1971)
21 Cal.App. 3d 857..........................................................................18, 19

*Hollywood Motion Picture Equip. Co. v. Furer* (1940)
16 Cal. 2d 184.....................................................................................19

*Hunter v. Sparling* (1948)
87 Cal.App. 2d 711...............................................................................21

*Hylton Flour Mills v. Bowen* (1933)
128 Cal.App. 711.................................................................................17

*Lacy v. Bennett* (1962)
207 Cal.App. 2d 796.............................................................................19

*McIllmoil v. Frawley Motor Co.* (1923)
190 Cal. 546.......................................................................................17

*Moncrief v. Clark* (2015)
238 Cal.App. 4th 1000........................................................................6, 8

*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007)
151 Cal.App. 4th 688............................................................................12

*Redfearn v. Trader Joe's Company* (2018)
20 Cal.App. 5th 989..............................................................................11

*Regalia v. Nethercutt Collection* (2009)
172 Cal.App. 4th 361............................................................................11

*Savage v. Pacific Gas & Electric Co.* (1993)
21 Cal.App. 4th 434..............................................................................11

*Secrest v. Security Nat. Mortg. Loan Trust 2002-2* (2008)
167 Cal.App. 4th 544.................................................................20

*West v. Hunt Foods* (1951)
101 Cal.App. 2d 597.................................................................21

*White Lighting Co v. Wolfson* (1968)
68 Cal. 2d 336........................................................................20

*Youngman v. Nevada Irr. Dist.* (1969)
70 Cal. 2d 240........................................................................21

## STATUTES

California Civil Code §1624.................................................................19

California Civil Code, § 46.................................................................10

## OTHER AUTHORITIES

5 Witkin, Summary of Cal. Law (11th ed. 2017) Torts, § 651 ...................................10

ERVIN COHEN & JESSUP LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This Court has specific personal jurisdiction over the Ajin LLCs. Counterclaimants alleged that if any joint venture was reached, it necessarily included not only Counterclaimants' Ace Hotel Project but also Counter-Defendants Ajin Project.[1]  SRC is the managing member of the Ajin LLCs and Choi is the managing member of SRC.  When, as alleged, Choi and SRC were personally negotiating the alleged joint venture in California and directing telephonic and email communications to known California residents in California, they were purposely availing themselves of California.  Furthermore, this purposeful availing was necessarily made not just on their own behalf but on behalf of the Ajin LLCs because any deal to share in the profits or control of the Ajin Project, as Counterclaimants allege was contemplated under the proposed joint venture, would require the inclusion of the Ajin LLCs.

The declaratory relief Counterclaim seeks this Court's determination of the proper scope of any joint venture agreement allegedly reached, so that claim undoubtedly arises out of the Ajin LLCs' contacts in California, which were specifically aimed at getting Counterclaimants to agree to a joint venture on the Ace Hotel and Ajin projects.  Given that (1) Counterclaimants have adequately alleged the Ajin LLCs, through their principals/agents Choi and SRC, purposefully availed themselves of California; (2) Counterclaimants have adequately shown the Declaratory Relief counterclaim arose from those California contacts, and (3) Counter-Defendants flat out declined to even attempt to show that the exercise of personal jurisdiction is unreasonable (because they can't), all of the factors required

---

[1] The Declaration of Young Kim includes the Draft Term Sheet he sent to Choi on October 6, 2015 that expressly includes the SRC Ajin Wooshin Fund under the list of contemplated projects, further evidencing that the Ajin LLCs were always contemplated in any potential partnership or joint venture.

1  to satisfy the exertion of personal jurisdiction over the Ajin LLCs have been met.

2  None of Counter-Defendants' 12(b)(6) arguments has any merit either.

3  Counterclaimants have satisfactorily pleaded three different independently wrongful

4  acts in conjunction with the tortious interference with prospective economic

5  advantage: (1) defamation; (2) unfair business practices under California UCL; and

6  (3) tortious interference with contract/unlawful business practices under California

7  UCL.  Any one of these is sufficient for the claim to stand.

8  Counter-Defendants' challenge to rescission/fraud claim fails for the simple

9  reason that the counterclaim was pleaded with the required specificity.

10  Furthermore, the law does not require the fraudulent statements to be repeated

11  verbatim.  Counter-Defendants have alleged in detail the substance of the

12  misrepresentations and that is enough.

13  The breach of oral contract counterclaim is also sufficiently pleaded.  The

14  mere fact that Chang was free to pick which graduate school he wished to attend and

15  no fixed price was agreed upon earlier does not render the contract fatally uncertain.

16  And the statute of frauds argument fails for three separate reasons: (1) Chang's

17  obligations could be completed within one year; (2) Chang fully performed under

18  the contract; and (3) estoppel was adequately pleaded.

19  Finally, Counter-Defendants' attack on the promissory estoppel counterclaim

20  fails as well.  Courts have long held that where a retention bonus is offered to an

21  employee to stay at a job, rather than made part of the initial consideration for taking

22  the job, failure to pay the bonus is grounds for a promissory estoppel claim.  Choi's

23  promise to pay the graduate school tuition to Chang is a retention bonus for all

24  intents and purposes.

25  **II.  THE AJIN LLC'S ARE SUBJECT TO PERSONAL JURISDICTION**

26  **A.  Standard on 12(b)(2) Motion to Dismiss**

27  "When a district court acts on a defendant's motion to dismiss without

28  holding an evidentiary hearing, the plaintiff need make only a prima facie showing

ERVIN COHEN & JESSUP LLP

of jurisdictional facts to withstand the motion to dismiss. That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant. *Ballard v. Savage* (9th Cir. 1995) 65 F.3d 1495, 1498. Where not directly controverted, plaintiff's version of the facts is taken as true for purposes of a 12(b)(2) motion to dismiss. *AT & T v. Compagnie Bruxelles Lambert* (9th Cir. 1996) 94 F.3d 586, 588.

**B.** **The Ajin LLC's Were Part of the Alleged Joint Venture and Purposefully Directed Activity in This District, Which Gives Rise to the Imposition of Specific Jurisdiction**

**1.** *Statement of Jurisdictional Facts*

Counterclaimants have alleged throughout their Amended Counterclaim that they never reached an agreement on any joint venture with Counter-Defendants. However, in their Declaratory Relief Counterclaim, Counterclaimants allege that the only joint venture that the parties ever contemplated and had preliminary negotiations about was one that would include Counterclaimants' and Counter-Defendants' companies and projects, including the Ajin Project (of which the Ajin LLCs were the investment vehicles). (Amended Counterclaim, ¶ 72). Thus, the Declaratory Relief Counterclaim asks this Court, to the extent it finds that a joint venture was in fact reached, to declare that "Kim should be entitled to an accounting, access to the books and records, and collection of profits, of and from" SRC and the Ajin LLCs.[2] (*Id.*)

---

[2] Notably, the First Amended Complaint in this action contains a claim for accounting against the MRE Funds, which are the holding companies for the Ace Hotel project. In Paragraph 189, Plaintiffs alleged they "are entitled to an accounting by Defendants of all financial transactions relating to the business of the joint venture, including the operation and financial transaction of 8th Bridge, Inc., 8th Bridge LLC, MRE Fund GP, MRE Fund LP, MRE Fund II LP and MRE Equity Fund." Counterclaimants Declaratory Relief Counterclaim seeks that same relief since it alleges that if there was a joint venture, the business of that joint venture includes the Ajin Project and if the formation of the alleged joint venture agreement calls for an accounting in to the Ace Project's holding funds, it necessarily calls for an accounting of the Ajin Project's holding (footnote continued)

ERVIN COHEN & JESSUP LLP

1    Counterclaimants have alleged that a significant portion of the face-to-face

2    negotiations with Counter-Defendants occurred when Counter-Defendants came to

3    California for the express purpose of convincing Counterclaimants to agree to the

4    alleged joint venture.  (Amended Counterclaim, ¶¶ 18, 27).  They also alleged that

5    the email and telephonic portions of the negotiations occurred while

6    Counterclaimants were in California, where Counter-Defendants knew they were

7    residents and domiciled.  (Amended Counterclaim, ¶ 18).

8    Paragraph 31 of the Amended Counterclaim states in part "Based on Choi's

9    misrepresentations, on October 6, 2015, Kim sent Choi an initial draft of 'Indicative

10   Terms for Collaboration Agreement between Moses Choi and Young Kim' ('Draft

11   Term Sheet').  This term sheet specifically included the SRC Ajin-Wooshin Fund

12   under the list of Initial Projects and this was in fact the only one of the four listed

13   projects that was managed by Choi and SRC.  (Kim Dec., Ex. A).

14   Notably, Counter-Defendants' Statement of Jurisdictional Facts completely

15   ignores the allegations in the Amended Counterclaim regarding specific jurisdiction.

16   Instead, Counter-Defendants focus solely on the allegations in their First Amended

17   Complaint—namely, their allegations that fail to make any mention of the Ajin

18   Project in connection with the alleged joint venture.  (Motion, p. 10 "But the joint

19   venture, as alleged, was between Choi and SRC on one hand, and Kim and 8th

20   Bridge Inc. on the other.")  It is axiomatic that the relevant allegations on a motion

21   to dismiss a counterclaim are the allegations in that counterclaim, not the allegations

22   in the complaint.  Given that Counter-Defendants allegations don't directly

23   contradict those of Counterclaimants with respect to the inclusion of the Ajin Project

24   being part of the contemplated joint venture (not to mention their inclusion in the

25   Draft Term Sheet), this Court must accept for purposes of this Motion that the profit

26

27   _____

28   funds as well.

ERVIN COHEN & JESSUP LLP

1  from the Ajin Project, and by necessary extension, the investment vehicle Ajin

2  LLC's, were part of any joint venture agreement to the extent one was reached.  *See*

3  *AT &T* at 588.

4            2.    ***The Ajin LLCs Purposefully Availed Themselves of California***

5                  ***by Negotiating in California, Targeting California Residents***

6                  ***and Allegedly Agreeing to a Long-Term Contract With***

7                  ***California Residents***

8            Counter-Defendants admit that Moses Choi is the sole managing member of

9  SRC and that SRC is the managing member of the Ajin LLCs.  (Motion, p. 4).  It is

10  therefore indisputable that at all relevant times during which Choi was negotiating

11  the joint venture with Counterclaimants, he controlled, spoke for, and had the power

12  to bind the Ajin LLCs.  Thus, when Choi was negotiating the joint venture

13  agreement while he was in California, or when he was negotiating by email and

14  telephone knowing that Counterclaimants were receiving these transmissions while

15  they were in California, it was as if the Ajin LLCs themselves were negotiating in

16  California and/or knowingly directing their activities toward California.

17            Put more simply, the Ajin LLCs were part of the alleged joint venture and

18  Choi was directing activities toward California on their behalf every bit as much as

19  we was for himself and SRC.  Given that the Ajin LLCs are believed to be the

20  entities that have received all the financial profits of the Ajin Project, which Choi,

21  on the Ajin LLCs behalf, agreed to share with Counterclaimants if a joint venture

22  was ever agreed to, it must be the case that Choi was acting in part as the Ajin LLCs

23  principal and/or agent when he was negotiating the deal in California and targeting

24  California residents.  There simply is no functional way for a joint venture regarding

25  the sharing of the profits from the Ajin Project to be formed without the consent of

26  the Ajin LLCs, which in this instance came from Choi and SRC in a manner that

27  was purposefully availing of California.

28            Counter-Defendants reliance on *Picot v. Weston* (9th Cir. 2015) 780 F.3d 1206

ERVIN COHEN & JESSUP LLP

1   is misplaced.  In that case, "the defendant never entered California or reached out to

2   a California resident in the course of his conduct."  *United Tactical Systems LLC v.*

3   *Real Action Paintball, Inc.* (N.D. Cal. 2015) 108 F.Supp. 3d 733, 748; *See also*

4   *Picot* at 1215.  Here, the Ajin LLCs, through Choi, did exactly that—they visited

5   California and targeted California residents to try to consummate a transaction (the

6   alleged joint venture)—which is sufficient to confer specific jurisdiction.  *See e.g.*

7   *Sustainable Ranching Partners, Inc.* (N.D. Cal. 2017) 2017 WL 4805576 at *5

8   (finding specific personal jurisdiction appropriate where "Plaintiff contends that

9   Defendant's trip to California was for the purpose of soliciting [Plaintiff's

10   principal's] business and continuing negotiations between the parties, and that

11   Defendant made representations in California that induced Plaintiff to enter into the

12   parties' contract."); *see also Moncrief v. Clark* (2015) 238 Cal.App. 4th 1000, 1007

13   (holding that while parties engaged in a single transaction, defendant targeted

14   plaintiff via phone and email with the specific purpose of inducing plaintiff to

15   finalize a purchase contract).

16          *Anglo Irish Bank Corp., PLC v. Superior Court* (2008) 165 Cal.App. 4th 969

17   is decidedly more on point.  In that case, individual foreign defendants came to

18   California to solicit investments and succeeded.  In a case arising out of one of those

19   investments, the court held it had personal jurisdiction over not just the individuals

20   but also the companies they represented.  *Id.* at 984.  In arriving at this conclusion,

21   the court focused their analysis on two critical legal tenets at play in this case as

22   well.  First, a "corporation or other business entity acts through authorized

23   individuals, and the activities of its employees are attributed to the business entity

24   for purposes of personal jurisdiction."  *Id.* at 981.  Second, "apart from an

25   employment relationship, activities that are undertaken on behalf of a defendant may

26   be attributed to that defendant for purposes of personal jurisdiction if the defendant

27   purposefully directed those activities toward the forum state."  *Id.*

28          Here, Counter-Defendants were effectively seeking an investment from

ERVIN COHEN & JESSUP LLP

1  California residents (Counterclaimants) in the form of a joint venture whereby

2  Counterclaimants would invest the capital and profits from their deals, including the

3  Ace Project.  Since Counterclaimants have alleged that the joint venture included

4  part of the profits of the Ajin Project, Choi and SRC were necessarily acting on the

5  Ajin LLCs' behalf when these California solicitations and alleged agreements were

6  made.  This is sufficient to confer jurisdiction.  *Id.; see also Yen v. Buchholz* (N.D.

7  Cal. 2010) 2010 WL 1758623 at *6-7.  Furthermore, since the "economic activity"

8  of the proposed transaction directly involved the Ajin LLCs, the purposeful availing

9  of California by Choi and SRC to negotiate and consummate the deal is imputed the

10  Ajin LLCs for personal jurisdiction purposes.  *See Anglo Irish Bank* at 984

11  Finally, it also should not be lost on this Court that the alleged contract

12  entered into between the parties was a long term joint venture agreement.  Courts

13  have made clear that where foreign parties contract to create long term business

14  relationships with California corporations and each side maintains existing

15  obligations, they can reasonably anticipate being hailed into California's courts.  *See*

16  *e.g. Advanced Targeting Systems, Inc. v. Advanced Pain Remedies, Inc.* (S.D. Cal.

17  2014) 2014 WL 347608 at *8.

18  ### 3. The Declaratory Relief Claim Arises Out of the Forum Related

19  ### Activities

20  Counter-Defendants wrongfully claim there "is no evidence of actions of any

21  kind taken by the Ajin LLCs in California, much less actions indicating that they

22  were intended to be members of the joint venture." (Motion, p. 10).  To the

23  contrary, Counterclaimants allege that the Ajin LLCs' principals/agents, Choi and

24  SRC, negotiated in California with known California residents on their behalf for

25  their profits and control to be part of the contemplated joint venture.  (Amended

26  Counterclaim, ¶¶ 31, 72).  The Draft Term Sheet (Kim Dec., Ex. A) reflects the fact

27  that the Ajin LLCs were considered part of the joint venture.  This is sufficient to

28  confer specific personal jurisdiction.  *See Checker Motors Corporation v. Superior*

ERVIN COHEN & JESSUP LLP

*Court* (1993) 13 Cal.App. 4th 1007, 1018 (defendant was subject to suit in California in a case arising out of an investment contract where defendant's agent met with a California resident to solicit investment, the investment contract was mailed to California, an representative of the investor signed it in California, and money was sent into and out of California); *see also Yen* at *7.

The operative facts of the controversy of Counterclaimants' Declaratory Relief Counterclaim are effectively what the scope of the joint venture was, if any such agreement was in fact reached.  The allegations in the Amended Counterclaim, buttressed by the Draft Term Sheet, assert that any joint venture was to include ownership and control of the Ajin project, which profits were held by the Ajin LLCs, who themselves were subsidiaries of SRC and ultimately managed and controlled by Choi.  Thus, where the Ajin LLC's contacts with California involve the negotiations and alleged agreement to form a joint venture, there can hardly be any argument that the claim to determine the scope of the joint venture and secure an accounting thereunder arises out of their forum related contacts.  *See e.g. Moncrief* at 1008 (where the "operative facts of the controversy are whether [defendant] misrepresented information about the farm equipment when he spoke to [plaintiff]" in California during the negotiations that led to the purchase being consummated, the relatedness prong was satisfied).

### 4.    *Counter-Defendants Have Not Met Their Burden That the Exercise of Jurisdiction is Unreasonable*

Counter-Defendants deliberately make no attempt to show that the exercise of jurisdiction over the Ajin LLCs is unreasonable, a burden they acknowledge is squarely on them.  (Motion, p. 8, citing *Schwarzenegger v. Fred Martin Motor Co.* (9th Cir. 2004) 374 F. 3d 797, 802).  This Court should therefore decline to entertain any subsequent arguments made by Counter-Defendants in their Reply or at oral argument on this point.  However, if this Court desires to engage in this analysis, it should readily see that the enumerated factors cited by Counter-Defendants in

8

ERVIN COHEN & JESSUP LLP

*Caruth v. Int'l Psychoanalytical Ass'n* (9th Cir. 1995) 59 F. 3d 126, 128 tilt strongly in favor of Counterclaimants.

As detailed above, the extent of Counter-Defendants, including the Ajin LLCs purposeful injection into California's affairs is sizeable (factor 1). They targeted California residents and businesses for what was hoped to be a long-term continued partnership or joint venture and made several trips to California to convince Counterclaimants to agree to the alleged joint venture agreement. Furthermore, Choi and SRC, the managing members of the Ajin LLCs, filed a lawsuit in California relating to the very joint venture agreement that is the subject of the Declaratory Relief Counterclaim. This not only demonstrates a significant purposeful injection into California but also makes clear that the burden on the Ajin LLCs is minimal (factor 2) and given that this lawsuit is already seeking to adjudicate the scope of any alleged joint venture, the most efficient judicial resolution would call for all the counterclaims regarding the joint venture to be litigated in the same action as the claims in the complaint (factor 5).

California and Counterclaimants alike have a strong interest in having this litigated here because the case involves California residents and corporations who were specifically targeted in this forum. (Factors 4 and 6). Furthermore, given that Counterclaimants are already forced to defend a lawsuit in this Court, forcing Counterclaimants to litigate two matters regarding the same operative facts concurrently in courts across the country from each other (presuming Alabama or Georgia are the other possible forums) is highly prejudicial. (Factor 6). Finally, there is no known conflict of law (factor 3) and Counter-Defendants have provided no indication as to what suitable alternative forum exists (factor 7).

## III.    THE COUNTERCLAIMS ARE ALL WELL-PLEADED

### A.    The Counterclaim for Interference with Prospective Economic Advantage Sufficiently Alleges the Independently Wrongful Acts of Counter-Defendants

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

### 1.   *Defamation*

Counterclaimants have alleged that they had a longstanding business relationship with Tran Van Tinh ("Tinh") and his company IMM Group PTE LTD ("IMM") whereby IMM, *inter alia,* helped source investors for Counterclaimants' EB-5 deals.  (Amended Counterclaim, ¶¶ 24, 61).  Counterclaimants have further alleged that Counter-Defendants attempted to disrupt Counterclaimants' business relationship with IMM.  (Amended Counterclaim, ¶¶ 24, 63).  Specifically, Counterclaimants alleged "Choi intentionally told Tinh misinformation about his and Kim's business relationship in a deliberate attempt to demean Kim's reputation, paint him as an unscrupulous business partner and poison the relationship…the statements effectively amounted to defamatory statements relating to Kim's trustworthiness and business ethics that were false and made with the intent to disrupt the business relationship between Tinh and Kim and their companies." (Amended Counterclaim, ¶ 63).

As Counter-Defendants acknowledge, there is no requirement that Counter-Defendants plead the defamatory statements verbatim and setting forth the substance of the statements is sufficient.  (Motion, p. 12).  Here, Counterclaimants have alleged that the substance of the defamatory statements was that Kim was allegedly untrustworthy, unethical and unscrupulous in his business dealings, including with respect to EB-5 deals—the very types of deals on which IMM and Tinh worked on with Counterclaimants.

The law is clear that slander includes any false statements that "tends directly to injure him in respect to his office, profession, trade or business…"  Civil Code, § 46.  "An attack on the honesty of an employee or business person endangers his or her position and is actionable per se."  5 Witkin, Summary of Cal. Law (11th ed. 2017) Torts, § 651, p. 892.

Violations of "Civil Code section 46 have been held to include almost any language which, *upon its face,* has a natural tendency to injure a person's reputation,

either generally, or with respect to his occupation; and words clearly conveying a meaning within one of the statutory categories are actionable *per se*." *Regalia v. Nethercutt Collection* (2009) 172 Cal.App. 4th 361, 368. "Statements that reflect on the integrity and competence of the plaintiff, the clearest being allegations of unethical activity or incompetence" normally constitute slander. *Id.* at 369; *Redfearn v. Trader Joe's Company* (2018) 20 Cal.App. 5th 989, 1007 (statements that "charged [plaintiff] with unethical behavior [were] false statements that would have a natural tendency to injure him in his trade or business"); *Savage v. Pacific Gas & Electric Co.* (1993) 21 Cal.App. 4th 434, 446 ("There can be no doubt that a statement charging a journalist with conduct which is generally regarded as unethical under accepted journalistic standards would have a tendency to cause professional injury."); *Albertini v. Schaefer* (1979) 97 Cal.App. 3d 822, 830 (calling an attorney a "crook" is slander per se and "imputing dishonesty or lack of ethics to an attorney is also actionable under Civil Code 46 because of the probability of damage to professional reputation.")

Counterclaimants have sufficiently alleged that Counter-Defendants stated to Tinh and IMM that their alleged joint venturers (Counterclaimants) were dishonest, unethical and untrustworthy as business partners and in their professional dealings. These words are especially damning in Counterclaimants' line of business. By virtue of their involvement in the EB-5 business, one of Counterclaimants' primary responsibilities is finding foreign investors to contribute significant money (over $500,000 each) to their projects. Oftentimes, Counterclaimants would need to rely upon their foreign contacts, including Tinh and IMM, to help locate and source these investors. Foreign investors, and the agents who represent them, obviously are likely to be scared off investing such large amounts with businessmen accused of being dishonest crooks, which is effectively what Choi told Tinh about Counterclaimants.

Counter-Defendants argument that their comments to Tinh and IMM about

ERVIN COHEN & JESSUP LLP

1   Counterclaimants were mere opinion is unavailing.  False statements of fact,

2   whether expressly stated or implied from an expression of opinion, are actionable.

3   *Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App. 4th 688, 701.

4   "The key is not parsing whether a published statement is fact or opinion, but

5   whether a reasonable fact finder could conclude the published statement declares or

6   implies a provably false assertion of fact…And, when deciding whether a statement

7   communicates or implies a provably false assertion of fact, [courts] use a totality of

8   the circumstances test.  This entails examining the language of the statement.  For

9   words to be defamatory, they must be understood in a defamatory sense.  Next, the

10  context in which the statement was made must be considered…The contextual

11  analysis requires that courts examine the nature and full content of the particular

12  communication, as well as the knowledge and understanding of the audience

13  targeted by the publication."  *Id.* (citations omitted).

14      In *Milkovich v. Lorain Journal Co.* (1990) 497 U.S. 1, the United States

15  Supreme Court recognized that "expression of 'opinion' may often imply an

16  assertion of objective fact."  *Id.*at 18.  The court went on to explain "if a speaker

17  says, 'in my opinion John Jones is a liar,' he implies a knowledge of facts which

18  lead to the conclusion that Jones told an untruth.  Even if the speaker states the facts

19  upon which he bases his opinion, if those facts are either incorrect or incomplete, or

20  if his assessment of them is erroneous, the statement may still imply a false assertion

21  of fact.  Simply couching such statements in terms of opinion does not dispel these

22  implications."  *Id.* at 18-19.

23      Here, the substance of the allegations is that Counter-Defendants told Tinh

24  and IMM that Kim was a liar and an unethical and unscrupulous business partner.

25  Just like the John Jones example in *Milkovich,* Counter-Defendants were implying a

26  specific statement of facts known uniquely to them in making this publication.

27  Furthermore, *Overstock.com* requires the context of the statement to be analyzed

28  and it certainly supports the position that the defamatory statements are more than

ERVIN COHEN & JESSUP LLP

non-actionable opinion.  Tinh, the audience of the publication, knew that Counterclaimants and Counter-Defendants had worked together in some capacity on the Ace Hotel EB-5 deal.  (Amended Counterclaim, ¶¶ 42, 51).  In fact, given the allegations in the First Amended Complaint, it is likely Counter-Defendants exaggerated their role and told Tinh they were partners and/or joint venturers with Kim and 8th Bridge Capital.  Tinh himself had previously been partners with Counterclaimants, had worked on the Ace Hotel deal, and was in the process of negotiating work on a new EB-5 project with Counterclaimants.  (Amended Counterclaim, ¶ 61).  Thus, any statements made by Choi to Tinh alleging Kim to be dishonest, unethical and unscrupulous in business dealings with partners would necessarily be interpreted by Tinh to be based on specific facts emanating from Counter-Defendants' dealings with Counterclaimants with respect to, at a minimum, the Ace Hotel Project.  The statements are therefore actionable and the tortious interference with prospective economic advantage counterclaim can proceed.

### 2. *Unfair Business Practices in Violation of Cal. Bus. & Prof. Code Section 17200*

Courts are clear that the requirement of an independently wrongful act for a claim for intentional interference with prospective economic relations may be satisfied by an alleged violation of a borrowing statute like the California Unfair Competition Law (UCL).  *CRST Van Expedited, Inc. v. Werner Enterprises* (2007) 479 F.3d 1099, 1110.  "California's UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent….A business violates the unfair prong of the UCL if it is contrary to established public policy or if it's immoral, unethical, oppressive or unscrupulous and causes injury to consumer which outweighs its benefits.  "  *Luxul Technology v. Nectarlux, LLC* (N.D. Cal. 2015) 78 F.Supp. 3d 1156, 1174; Cal. Bus. & Prof. Code § 17200.

Here, Counterclaimants have alleged that "Choi wanted Tinh to focus his efforts marketing his Ajin project rather than any of [Counterclaimants'] projects"

ERVIN COHEN & JESSUP LLP

1   and that "Choi was upset that Kim refused to give in to his unwarranted demands

2   that he be paid a portion of the profits from the Ace Hotel project."  (Amended

3   Counterclaim, ¶ 63).  Counterclaimants further alleged that Counter-Defendants

4   deliberately misrepresented facts concerning their business dealings with

5   Counterclaimants and spread lies to Tinh to disrupt Counterclaimants' relationship

6   with Tinh and IMM.  (*Id.,* ¶ 64).   Therefore, what Counterclaimants have

7   substantively alleged is that Counter-Defendants disseminated intentionally false

8   and misleading information to sabotage Counterclaimants' business out of a mixture

9   of self-interest and unwarranted revenge.

10       In *Luxul,* the court found that where defendants made false representations to

11   plaintiff's customers (which Tinh and IMM effectively are) about legal issues facing

12   plaintiff that do not exist, this was actionable under the UCL.  78 F.Supp. 3d at

13   1174.  The court specifically found this behavior to be unfair even if it was not

14   necessarily unlawful, especially when the court balanced the impact to plaintiff

15   versus defendant's justifications.   *Id.*  There is no discernible difference between

16   spreading misinformation about legal troubles and spreading deliberate

17   misinformation about business ethics and patterns of dealing, so Counterclaimants

18   have adequately pleaded a claim on unfair behavior under the UCL, which satisfies

19   the independently wrongful requirement of the tortious interference with prospective

20   advantage counterclaim.

21       *3.*   ***Intentional Interference With Contract/Unlawful Business***

22       ***Practices Under Cal. Bus. & Prof. Code Section 17200***

23       Counterclaimants have also alleged that Choi would only allow Tinh to

24   market the Ajin Project if Tinh and IMM terminated their longstanding partnership

25   with Counterclaimants and ceased all current and future business dealings with

26   Counterclaimants.  (Amended Counterclaim, ¶¶ 24, 64).  Since Counterclaimants

27   and Tinh had already entered into a contract for Counterclaimants to perform

28   diligence on IMM's deals, Counter-Defendants' actions necessarily caused Tinh to

ERVIN COHEN & JESSUP LLP

terminate that contract and eviscerate the many years Counterclaimants and IMM had worked together.  (Amended Counterclaim, ¶¶ 24, 51, 53-56). Counterclaimants included a counterclaim for intentional interference with contract which Counter-Defendants have not challenged in the instant motion. This underscores the fact that the tortious interference with contract claim is well-pleaded.

In *CRST,* the 9th Circuit held that where party adequately alleged tortious interference with contract, this was grounds for a UCL claim.  479 F. 3d at 1110. Furthermore, that UCL violation was sufficient to serve as the wrongful act for a tortious interference with prospective economic advantage claim as well.  *Id.* at 1110-1111.  That case, much like this one, involved "allegations of contract interference coexisting with interference with prospective economic relations" and "allegations that both torts were simultaneously inflicted, along with a contemporaneous UCL violation dependent on one of torts."  *Id.* at 1010.

The *CRST* court acknowledged the initially confusing fact that "the allegations of interference with existing contract do triple duty: first as a basis for tort, then as a basis for a statutory violation, then again as the basis for another tort *because* of the allegation of a statutory violation, *because* of the tort first alleged. *Id.* at 1111.  However, the court went on to explain that "the reason for California's requirement of an act that is independently wrongful to establish intentional interference with prospective economic advantage is the California Supreme Court's decision to allow greater liberty of competitive forces where no contract yet exists with which to be interfered. But not *all* competitive forces are licit. What is "unlawful" competition per the UCL, is illicit. Hence, even though the act that constitutes the violation of tort duties—the alleged solicitation of Chatman and Spencer—is the same, it also violates the law, to wit, the UCL, independent of those tort duties."  *Id.*

The longstanding relationship and partnership between Counterclaimants and IMM involved some deals that had been reduced to contract (such as the diligence

and Ace Hotel Project) and others that were in the process of being finalized (the new EB-5 project).  Once IMM was wrongly persuaded to no longer entrust its diligence work to Counterclaimants, it was simultaneously persuaded to terminate all existing planning for the EB-5 project.  This is because IMM was induced to cease partnering with Counterclaimants on all business matters and once IMM was not having Counterclaimants perform the diligence work, there was considerably less synergy between the companies, which eviscerated the desire on IMM's end to participate in Counterclaimants' new EB-5 project.  Taken together, this creates the very situation present in *CRST* whereby the tortious interference with contract was unlawful under the UCL, and this UCL violation is sufficient to stand as the wrongful act for the tortious interference with prospective advantage claim.

### B.     The Counterclaim for Rescission Based on Fraud is Well-Pleaded

Counterclaimants have pleaded their counterclaim for rescission based on fraud with adequate specificity.  They allege that the misrepresentations were communicated by Choi to Kim and took place between April 2015 and October 2015.  (Amended Counterclaim, ¶¶ 27, 29, 75).  Thus, the "who" and the "when" are adequately pleaded.  Counterclaimants allege that the misrepresentations were made in person in China and Los Angeles, and through emails and telephone calls.  (Amended Counterclaim, ¶ 27, 75)  The "where" and "how" were thus adequately pleaded as well.  And Counter-Defendants do not challenge that the "what" is not sufficiently specific, as they identify the three fraudulent statements in their motion (Motion, p. 16)[3]

---

[3] Counter-Defendants' argument that the statements are summaries or paraphrasing of what was said is meritless.  It is unreasonable to expect Kim to remember the precise wording used by Choi in non-written communications from over three years ago.  Furthermore, Counter-Defendants have provided no authority for the proposition that detailed summaries of the nature of the fraudulent statements are insufficient and precise verbatim language must be pleaded.

ERVIN COHEN & JESSUP LLP

### C.  The Counterclaim for Breach of Oral Contract is Well-Pleaded

#### 1.  The Contract is not Uncertain

Counterclaimants' have alleged that Choi promised his former employee Patrick Chang that if Chang continued to work for Counter-Defendants for a year, Choi would pay for Chang to go to law or business school.  (Amended Counterclaim, ¶ 78).  Counter-Defendants' argument that the agreement is uncertain because there is no indication as to the amount of tuition Choi would have to pay is unpersuasive.

"The law does not favor, but leans against, the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained." *McIllmoil v. Frawley Motor Co.* (1923) 190 Cal. 546, 549.  In *McIllmoil,* the court found that even though a contract to buy a car did not specify the model of the new car or the purchase price, the contract was still not fatally uncertain because reasonable terms could be read into it.  *Id.* at 549-550.  The court further emphasized that the discretion given to determine which car to purchase did not render the contract fatally uncertain because the price of the various cars was determinable because cars have fixed prices and if the party seeking to enforce the contract was requesting something unreasonable or unconscionable, the law provides a remedy. *Id.* at 552-554; *See also Hylton Flour Mills v. Bowen* (1933) 128 Cal.App. 711, (holding that a contract by which defendant agreed to buy a definite number of barrels of flour within a certain designated time was enforceable by the vendor, notwithstanding the fact that the buyer, by the terms of the contract, was permitted a choice of five different brands, each brand having a different price, the court pointing out that the discretion permitted the defendant as to the quality or brand of flour to be selected by him did not introduce such an element of uncertainty as would invalidate the contract.)

Here, Counterclaimants have alleged that Chang was told by Choi that Choi

ERVIN COHEN & JESSUP LLP

1   would pay for him to go to law school or business school if Chang continued to

2   work for Choi.  The tuition costs for law schools and business schools are widely

3   published so it was readily inferable at the time Choi made the promise that he knew

4   the range of prices he was committing to.  Furthermore, since courts are required to

5   read reasonable terms into a contract where they are silent, the fact that there are

6   certain niche or specialized unaccredited programs that are outside the norm does

7   not render the contract defective either.

8       Counter-Defendants' reliance on *Goldberg v. City of Santa Clara* (1971) 21

9   Cal.App. 3d 857 is misplaced and actually cuts against them.  In that case, the court

10  specifically acknowledged that "a party to a contract may allow the amount of his

11  compensation to be determined by the other party to the contract, and it is true that if

12  the other party, when making the decision which has been left to him, acts in bad

13  faith (usually manifested by setting an unconscionably low figure), the matter may

14  be put to a jury or judge to decide upon the reasonable value." *Id.* at 861.  The court

15  even noted that when "the amount to be paid" is what is uncertain, as is allegedly

16  the case here, that can be resolved and the contract is not defective.  *Id.*  The amount

17  to be paid for tuition is the only indefinite term in the alleged oral contract so based

18  on *Goldberg,* the contract is enforceable.

19      The issue in *Goldberg,* was not the uncertainty of the amount paid but rather,

20  the unique situation where it was uncertain what the money was to be paid for or

21  how to calculate it.  *Id.*  In that case, letters between a lawyer and client called for

22  "additional compensation" to be paid if the lawyer's "efforts through settlement or

23  hearing bring about savings to the [client] of such magnitude as, in our opinion,

24  would justify additional compensation." *Id.* at 859.  This language was deemed

25  impermissibly vague because  there was no way to gauge what amount of money

26  that could possibly entail (unlike here where tuition costs are well-known and

27  relatively fixed) and the lawyer was the one responsible for determining whether the

28  vaguely phrased "savings…of such magnitude" condition precedent was met.

ERVIN COHEN & JESSUP LLP

The instant case is nothing like *Goldberg.* Rather, it is more akin to "the bonus cases, which are fairly numerous," that *Goldberg* discusses. *Id.* at 862, fn. 2. *Goldberg* stated that with these bonus cases "the object is plain: the inducing of a prospective employee to undertake employment, or of an already engaged employee to remain. Where the bonus is unspecified, the amount is the excess, if any, of the reasonable value of the services over the agreed salary." *Id.* Here, the graduate school tuition was similar to the bonus offered to retain an employee to stay with the company and the failure to quantify the amount of tuition does not render the contract uncertain.

### 2.      *The Contract is Not Barred By the Statute of Frauds*

(a)      Chang's Performance Could be Completed in One Year

Civil Code Section 1624 is interpreted "literally and narrowly." *Rosenthal v. Fonda* (9th Cir. 1988) 862 F. 2d 1398, 1401. "Only those oral contracts which 'expressly preclude performance within one year' or that "cannot possibly be performed within one year' are unenforceable." *Id.*; *see also Hollywood Motion Picture Equip. Co. v. Furer* (1940) 16 Cal. 2d 184, 187 ("It is well settled that oral contracts invalidated by the statute of frauds because not to be performed within a year include those only which *cannot* be performed within that period.") (emphasis in original)

"The test for determining whether an oral contract is not to be performed within a year lies wholly within *its terms.* The terms of the oral agreement may by express provision specify that the duty is not to be performed within a year, or by clear implication make it evident from the subject matter of the contract that a period longer than one year was contemplated by the parties." *Lacy v. Bennett* (1962) 207 Cal.App. 2d 796, 800.

Pursuant to the alleged terms of the oral contract, Chang was only required to work for SRC for one year for Choi to pay Chang's graduate school tuition. Thus, the terms of the oral agreement do not clearly state or implicate that the contract

1  cannot be performed with one year.

2  To the extent Counter-Defendants would argue that performance of the

3  contract would take longer than a year because Chang would still have to apply to

4  get in to and commence graduate school, such argument is unavailing.  Several

5  courts have held that "California's statute of frauds does not invalidate oral

6  employment contracts that call for the payment of commissions after one year or

7  upon termination of the employment relationship.  *Rosenthal,* 862 F. 2d at 1401.

8  "The inclusion of the provision for bonus ascertainable only after one year does not

9  invalidate the oral agreement under the statute of frauds…The key is the employee's

10  complete of the performance of the contract within one year." *White Lighting Co v.*

11  *Wolfson* (1968) 68 Cal. 2d 336, 342.  Here, Chang could have worked for a single

12  year and been eligible for the graduate school tuition retention bonus so the statute

13  of frauds is not implicated.

14         (b)    <u>Chang Alleged Full Performance of a Unilateral Contract</u>

15  "Where the contract is unilateral, or, though originally bilateral, has been

16  fully performed by one party, the remaining promise is taken out of the statute of

17  frauds, and the party who performed may enforce it against the other." *Secrest v.*

18  *Security Nat. Mortg. Loan Trust 2002-2* (2008) 167 Cal.App. 4th 544, 556; *See also*

19  *Blaustein v. Burton* (1970) 9 Cal.App. 3d 161, 185 ("Where a contract has been

20  fully performed by one party and nothing remains to be done except the payment of

21  money by the other party, the statute of frauds is inapplicable.")  This premise holds

22  so long as the performance consists of, *inter alia,* "rendering personal services or

23  doing something other than the payment of money." *Id.; see also Daniels v. Select*

24  *Portfolio Servicing, Inc.* (2016) 246 Cal.App. 4th 1150, 1176.

25  Here, Counterclaimants allege that Chang's entire obligation was to continue

26  working for Choi and SRC for one year and that Chang did just that.  (Amended

27  Counterclaim, ¶ 79).  Counterclaimants have thus alleged that Chang fully

28  performed under the contract by rendering personal services as requested by Choi.

ERVIN COHEN & JESSUP LLP

1  Under controlling authority, the statute of frauds does not bar the counterclaim.

2             (c)    __Chang Has Adequately Pleaded Estoppel__

3       Counter-Defendants' statute of frauds argument also fails because Chang has

4  satisfactorily pleaded estoppel.  As an initial matter, whether a contracting party

5  should be estopped to assert the statute of frauds is generally a question of fact.

6  *Byrne v. Laura* (1997) 52 Cal.App. 4th 1054, 1068.  Furthermore, where a party

7  changes their domicile and significantly modifies their work, it is possible for a trier

8  of fact to conclude that party had seriously changed his position in reliance on the

9  promises and was unconscionably injured as a result.  *Id.* at 1069.

10       Here, Chang has alleged that in reliance of Choi's promise, he not only

11  continued working for SRC, but that he moved from Georgia to Los Angeles and

12  took up a new line of work interning and learning the EB-5 trade under Kim.

13  (Amended Counterclaim, ¶ 79).  It is thus a question for the trier of fact whether this

14  is grounds for estoppel and not appropriate to be decided on the instant motion.

15  **D.**     __The Promissory Estoppel Counterclaim is Well Pleaded__

16       Courts have held that promises by employers to pay their employees a

17  pension, retirement allowance or specific bonus amount, which in turn induces the

18  employee to stay at the job, can be grounds for a promissory estoppel claim.

19  *Frebank Co. v. White* (1957) 152 Cal.App. 2d 522, 523; *West v. Hunt Foods* (1951)

20  101 Cal.App. 2d 597, 602; *Hunter v. Sparling* (1948) 87 Cal.App. 2d 711, 725.  So

21  long as these bonuses were not part of "the compensation specifically promised as a

22  part of the bargain under which the plaintiff accepted employment", the promissory

23  estoppel claim may stand.  *Youngman v. Nevada Irr. Dist.* (1969) 70 Cal. 2d 240,

24  250.  Furthermore, the 9th Circuit has stated "California sees greater risk in leaving

25  those who rely on promises unprotected than those who rely on the formalism of the

26  statute of frauds."  *Consortium Information Services, Inc. v. Credit Data Services,*

27  *Inc.* (9th Cir. 2005) 149 Fed.Appx. 575, 582.

28       As set forth in the Counterclaimants' counterclaim for promissory estoppel,

ERVIN COHEN & JESSUP LLP

1   Choi did not offer Chang the tuition bonus until after Chang commenced his
2   employment at SRC.  (Amended Counterclaim, ¶ 83).  Furthermore, Chang alleged
3   that he relied on that promise and continued to work for SRC for a considerable
4   period of time after the promise was made, which he would not have done
5   otherwise.  (*Id.,*  ¶¶ 84-85).  These allegations are sufficient for the promissory
6   estoppel counterclaim to survive the instant motion.

7   **IV.   <u>CONCLUSION</u>**

8        For the reasons set forth herein, Counterclaimants respectfully request that the
9   Motion be denied in its entirety.  To the extent this Court is inclined to dismiss the
10  Ajin LLCs for lack of personal jurisdiction or dismiss any of the counterclaims,
11  Counterclaimants respectfully request this Court grant leave to amend to cure any
12  perceived deficiencies in the pleadings.

13

14  DATED: June 25, 2018            ERVIN COHEN & JESSUP LLP
15                                             Russell M. Selmont

16

17                                    By:    */s/  Russell M. Selmont*
18                                             Russell M. Selmont
19                                             Attorneys for Defendants and
                                                Counterclaimants
20

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

### CENTRAL DISTRICT OF CALIFORNIA

*Moses Choi, et al. v. 8th Bridge Capital, Inc, et al.*

*Case No.: 2:17-cv-8958-CAS-AFM*

The undersigned certifies that on June 25, 2018, the following documents and all related attachments ("Documents") were filed with the Court using the CM/ECF system.

### OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS

Pursuant to L.R. 5-3.2, all parties to the above case and/or each attorneys of record herein who are registered users are being served with a copy of these Documents via the Court's CM/ECF system. Any other parties and/or attorneys of record who are not registered users from the following list are being served by first class mail.

By: _____*/s/  Russell M. Selmont*_____
Russell M. Selmont